**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUDITH A. TAYLOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:07cv1544 TCM |
| | ) | |
| ST. LOUIS COUNTY BOARD OF | ) | |
| ELECTION COMMISSIONERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court[1] on a motion for summary judgment filed by

Defendant St. Louis County Board of Election Commissioners ("the Board") [Doc. 50]; a

motion for summary judgment filed by Defendants John J. Diehl, Jr., Anita Yeckel, William

Miller, Jr., and Chaim H. Zimbalist ("the Individual Defendants") [Doc. 48]; all Defendants'

joint motion to strike portions of Judith A. Taylor's affidavit ("joint motion to strike) [Doc.

59]; and the Board's motion for leave to supplement its summary judgment motion [Doc. 64].

Plaintiff, Judith A. Taylor, opposes all the motions; and Defendants have filed replies in

support of their respective motions for summary judgment and their joint motion to strike.

Plaintiff alleges in Count I that she was discharged from her employment in violation

of the public policy exception to Missouri's employment at-will doctrine and in Count II that

she was paid lower wages than her male counterpart in violation of the Equal Pay Act

("EPA"), 29 U.S.C. §§ 206(d) and 215(a)(2).[2]  (Doc. 1.)  Plaintiff sued the Individual

---

[1]  The case is before the undersigned United States Magistrate Judge by written consent of
the parties.  See 28 U.S.C. § 636(c).

[2]  This case was originally filed in state court and was removed to this Court.

Defendants in their individual and their official capacities, and seeks both monetary and equitable relief from all Defendants. (Id.) By an earlier order, the Court dismissed claims in Count I against the Board and the Individual Defendants sued in their official capacities, as well as the claims in Count II against the Individual Defendants. (Doc. 20.) Therefore, the claims remaining before the Court are the claim in Count I against the Individual Defendants sued in their individual capacities only and the claim in Count II against the Board only.

## **Background**

The undisputed facts establish the following. The members of the Board are appointed by the Governor, with two Commissioners being members of one major political party and two Commissioners being members of the other major political party, which for this lawsuit are the Democratic and Republican parties. ( Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 1 [Doc. 52];[3] Mo. Rev. Stat. §§ 115.027.1 and 115.013(13).) Republican John Diehl ("Defendant Diehl") was Chairman of the Board from 2005-2007. (Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 22.) In 2005, the Governor appointed Anita Yeckel ("Defendant Yeckel") to serve as a Republican Commissioner, and William Miller ("Defendant Miller") and Chaim Zimbalist ("Defendant Zimbalist") to serve as Democratic Commissioners. (Id. ¶¶ 23, 24, 25.) The Board, to the extent permitted by statute, oversees and determines policy for elections in St. Louis County and employs staff in a bipartisan manner. Mo. Rev. Stat. §§ 115.043, 115.047, and 115.053.

---

[3] The Court will only cite to those material facts set out by Defendants which Plaintiff agrees to or accepts.

The Board is responsible for hiring and terminating Directors of Elections, who serve at the will of the Board. (Defs.' Joint Statem. Uncontr. Mat. Facts ¶¶ 7, 10.) The Board employs one Republican Director of Elections and one Democratic Director of Elections. (Defs.' Ex. B at 97; Defs.' Ex. D at 16; Defs.' Ex. E at 17; Taylor Aff. ¶16.) The Directors, who are subject to oversight by the Commissioners, are responsible for the Board's day-to-day operations. (Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 6.) No individual Commissioner can terminate a Director, for the decision to terminate a Director requires a majority vote of the Commissioners. (Id. ¶¶ 61, 62.) The Director from the same political party as the Governor is designated as the "Lead Director." (Id. ¶ 12.)

Plaintiff, who had been employed by the Board for over twenty years and has a high school diploma (id. at ¶ 92; Taylor Aff. ¶¶ 1, 2), became the Democratic Director in 1998 (Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 16). Plaintiff was the Lead Director when the Governor was a Democrat and was not Lead Director when the Governor was a Republican. (Id. ¶¶ 19, 20.) From 2001 to 2003, Plaintiff and the Republican Director, David Welch, received the same salary. (Id. ¶ 80.) Plaintiff was employed as the Democratic Director until February 24, 2007, when the Board voted unanimously to end Plaintiff's employment. (Id. ¶¶ 21, 60.)

The Help America Vote Act of 2002 ("HAVA"), codified at 42 U.S.C. §§ 15301-15545, required the Board to switch from punch card voting to computerized voting. (Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 27.) In and around 2005, in its effort to comply with HAVA, the Board looked into purchasing electronic voting machines. (Taylor Dep. at 62-63 [Doc. 52-2]; Taylor Aff. ¶¶ 22, 23.)

In early summer 2005, Defendant Diehl approached the Honorable Joseph A. Goeke, III (Judge Goeke), a Republican, to see if he would consider becoming the Lead Director. (Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 32.) Judge Goeke has a law degree; academic course work towards a masters degree in accounting; thirty years experience with the United States Coast Guard Reserves, having retired as a Captain; and thirty years combined service as an Associate Circuit Court Judge and Magistrate Judge in St. Louis County, which included experience in implementing new practices and procedures, as well as working with computers and automated systems, in the St. Louis County Court. (Id. ¶ 33.) Judge Goeke is also able to use the basic Excel, to provide speadsheet information and budget information, and to put together RFPs. (Id. ¶ 91.) Judge Goeke informed Defendant Diehl that he was planning on retiring from the bench in October 2006 and would not change his retirement to accept the Lead Director position for a salary less than a Circuit Judge would make, which was approximately $108,000 per year. (Id. ¶¶ 35, 36.) Judge Goeke became the Lead Director in late 2005 (id. ¶ 41), because there was a Republican Governor (id. ¶ 84), and, as of October 31, 2008, was still employed as the Republican Director and Lead Director (id. ¶ 95). The Board paid Judge Goeke $6,000 a year more than Plaintiff. (Taylor Aff. ¶ 17.)

During Plaintiff's tenure as a Director, she was subpoenaed approximately ten times and was not discharged after any of those subpoenas. (Defs.' Joint Statem. Uncontr. Mat. Facts ¶¶ 49, 50.) In August 2006, attorney Burt Newman issued a subpoena to Plaintiff for her to testify in Jefferson City regarding a voter identification law. (Id. ¶¶ 47, 48.) In compliance with that subpoena Plaintiff testified in the Circuit Court for Cole County in August 2006. (Taylor Aff. ¶ 8.)

After her discharge on February 24, 2007, Plaintiff filed this action. Defendants removed the action to this Court and filed answers to the petition. (Docs. 1, 8, 21, 22, 23, and 24.) Now pending before the Court are Defendants' motions for summary judgment and joint motion to strike portions of Plaintiff's affidavit, as well as the Board's motion for leave to supplement its motion for summary judgment.

## Discussion

The Board's Motion for Leave to Supplement Motion for Summary Judgment. By its motion for leave to supplement its motion for summary judgment, which was filed approximately two weeks after the motions for summary judgment, responses, and replies were filed, the Board seeks leave to supplement its summary judgment motion with portions of a transcript of Plaintiff's testimony during the August 2006 proceeding in Jefferson City. The Board urges Plaintiff's testimony in that transcript supports the Board's position that the Lead Director has more responsibilities than the other Director. Plaintiff counters, in relevant part, that there is no explanation for the Board's failure to submit this transcript in a timely fashion or for the Board's inability to access Plaintiff's 2006 testimony earlier.

Due to the absence of an explanation why this 2006 testimony was not available to the Board before, and submitted when, it filed its motion for summary judgment on October 1, 2008, the Court finds the supplementation untimely because the transcript was available before the Board initially moved for summary judgment. See **In re Marlar**, 267 F.3d 749, 756 (8th Cir. 2001) (finding a bankruptcy court was well within its discretion in denying a motion to reconsider the entry of summary judgment upon concluding the offered evidence was untimely because it was available when the motion for summary judgment was filed).

The Court denies the Board's motion for leave to supplement its motion for summary judgment.

Defendants' Joint Motion to Strike Portions of Plaintiff's Affidavit. Plaintiff was deposed on August 26, 2008. (Taylor Dep. [Docs. 52-2, 60-1, 61-1].) Plaintiff's affidavit was filed October 31, 2008, in response to Defendants' motions for summary judgment. [Taylor Aff. [Doc. 58-1].)

By their joint motion to strike, Defendants ask the Court to strike portions of paragraphs 10 and 18 of Plaintiff's affidavit, as well as all of paragraphs 25 and 26, of that affidavit, as containing either speculative statements that are not based on Plaintiff's knowledge or statements that contradict Plaintiff's prior deposition testimony. Plaintiff counters that the challenged portion of paragraph 10 does not contradict her earlier deposition testimony; the challenged portion of paragraph 18 is not speculative but "is an obvious declaration about the legal underpinning of county boards of election in Missouri made by someone with over thirty years of employment experience with . . . an election board." (Pl.'s Resp. to Defs.' Joint Mot. to Strike Portions of Pl.'s Aff. at 2-3 [Doc. 63].) Plaintiff also argues that the two challenged paragraphs, paragraphs 25 and 26, respond to objectionable and vague deposition questions calling for legal conclusions, and paragraphs 25 and 26 in her affidavit constitute clarification of her answers to those deposition questions after "relevant legal terms were defined for" her. (Id. at 4.)

A court may consider only those affidavits supporting or opposing a summary judgment motion that satisfy the requirements of Federal Rule Civil Procedure 56(e). **Aucutt v. Six Flags Over Mid-America, Inc.**, 85 F.3d 1311, 1317 (8th Cir. 1996). Federal Rule

of Civil Procedure 56(e)(1) provides that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." See **El Deeb v. University of Minn.**, 60 F.3d 423, 428 (8th Cir. 1995) (the contents of an affidavit regarding a motion for summary judgment must be based upon the affiant's personal knowledge and "include enough factual support to show that the affiant possesses that knowledge"). Therefore, in resolving motions for summary judgment, a court may "consider only admissible evidence" and cannot use "affidavits and depositions that were made without personal knowledge, consist[] of hearsay, or purport[] to state legal conclusions as fact." **Murphy v. Missouri Dept. of Corr.**, 372 F.3d 979, 982 (8th Cir. 2004); accord **Phillips v. Jasper County Jail**, 437 F.3d 791, 796 (8th Cir. 2006) ("[a]ffidavits that contain evidence not admissible at trial should not be relied upon" for summary judgment motions); **Brooks v. Tri-Sys., Inc.**, 425 F.3d 1109, 1111 (8th Cir. 2005) (inadmissible evidence "may not be used to support or defeat a motion for summary judgment"). Moreover, an affiant's belief as to certain facts may not be considered on summary judgment when that belief is not based on personal knowledge. **Camfield Tires, Inc. v. Michelin Tire Corp.**, 719 F.2d 1361, 1367 (8th Cir. 1983); see **Weitlauf v. Parkway Sch. Dist.**, No. 4:07CV0407 ERW, 2008 WL 3925162, at *4 (E.D. Mo. Aug. 20, 2008) (while "a statement [in an affidavit] does not become inadmissible simply because the affiant uses the word . . . believe," an affiant's "belief as to certain facts, when not based on personal knowledge, is not admissible as evidence"). When an affidavit does not meet the requirements of Rule 56(e), "it is subject to a motion to strike." **McSpadden v. Mullins**, 456 F.2d 428, 430 (8th Cir. 1972).

A post-deposition affidavit that conflicts with earlier deposition testimony is also subject to a motion to strike. See **Popoalii v. Correctional Med. Servs.**, 512 F.3d 488, 498 and 499 (8th Cir. 2008) (concluding the district court did not abuse its discretion in striking an expert's affidavit that was "actually inconsistent" with the expert's prior deposition testimony); accord **Mountain Pure, LLC v. Bank of America, N.A.**, 481 F.3d 573, 577 (8th Cir. 2007) (concluding the district court properly found an affidavit that contradicted earlier deposition testimony did not create a genuine issue of material fact). The court must, however, exercise extreme caution and articulate with care its reasons for finding an affidavit contradictory of earlier testimony. **Mountain Pure, LLC**, 481 F.3d at 577; **City of St. Joseph, Mo. v. Southwestern Bell Tel.**, 439 F.3d 468, 476 (8th Cir. 2006); **Camfield Tires, Inc.**, 719 F.2d at 1366. This is because a court should not strike a post-deposition affidavit that "simply restates information already contained in deposition testimony or elaborates on information already conveyed," **Popoalii**, 512 F.3d at 498, that does not actually contradict the affiant's earlier testimony, that includes statements "that [the affiant] was confused in [the earlier] deposition or where the affiant needs to explain portions of [the earlier] deposition testimony that were unclear," **City of St. Joseph, Mo.**, 439 F.3d at 476; accord **Brannon v. Luco Mop Co.**, 521 F.3d 843, 847 (8th Cir.), cert. denied, 129 S.Ct. 725 (2008) (district court properly denied motion to strike an affidavit that contained inconsistencies that clarified, rather than contradicted, prior deposition testimony); **Popoalii**, 512 F.3d at 498 (a court should consider a post-deposition affidavit when "the prior deposition testimony shows confusion, and the subsequent affidavit helps explain the contradiction"). When an affiant

bases the post-deposition affidavit on confusion during the deposition, the affidavit should state what confused the affiant during the earlier deposition and offer a plausible reason for the confusion.  See **Herring v. Canada Life Assur. Co.**, 207 F.3d 1026, 1030-31 (8th Cir. 2000).

First, Defendants challenge the following underlined portion of paragraph 10 of Plaintiff's affidavit:

> 10.  In early September, 2006, after [a] closed session meeting, which according to the Board's website involved "personnel issues," Defendants Miller and Zimbalist, <u>on behalf of all Defendants</u>, approached me and asked me to resign and retire.  They gave me no reason for this outlandish request.

(Taylor Aff. ¶ 10 (emphasis added).)  In her earlier deposition, Plaintiff testified to this conversation as follows:

> Q.      When did Mr. Zimbalist and Mr. Miller come in and ask you to resign or retire?
>
> A.      It was September 2006.
>
> Q.      Tell me how that occurred?
>
> A.      They called and said they were coming to talk to me, and they just came in, and we had some appointments to go over, . . . and that's when they asked me if I would resign or retire.
>
> Q.      Did they say why they were asking you?
>
> A.      No.
>
> Q.      Did you ask them?
>
> A.      No.

(Taylor Dep. at 55-56 [Doc. 60-1].)

Defendants point out that Plaintiff did not testify at her deposition that those two Defendants were meeting with her on behalf of all Defendants, but instead testified she did not know why they were asking her to resign or retire. Therefore, Defendants argue, the Court should strike the "on behalf of all Defendants" portion of paragraph 10 as speculative, not based on Plaintiff's personal knowledge, and as contradicted by Plaintiff's earlier deposition testimony. Plaintiff counters that her deposition testimony does not contradict the challenged portion of paragraph 10 because she was not asked whether Defendants Miller and Zimbalist approached her on behalf of all Defendants. Plaintiff also contends her affidavit is supported both by the closed session about personnel matters that preceded the conversation, and by Newman's affidavit averment that, around the same time, Defendant Zimbalist called him to discuss "the Judy Taylor situation" and Newman told Defendant Zimbalist of Newman's concerns regarding all Individual Defendants' "attacks on" Plaintiff. (Newman Aff. ¶ 12.)

Plaintiff's affidavit does not clearly set forth how Plaintiff has personal knowledge that the conversation she had with two of the Individual Defendants about her retirement or resignation was a conversation "on behalf of all Defendants." See **El Deeb**, 60 F.3d at 428 (the contents of an affidavit regarding a motion for summary judgment must be based upon the affiant's personal knowledge and "include enough factual support to show that the affiant possesses that knowledge"). Due to the lack of factual support in the affidavit for this challenged statement, the Court will strike the statement as no more than speculative and inadmissible.

Defendants next challenge the underlined portion of paragraph 18 of Plaintiff's affidavit:

> 18. During my thirty plus years with the Board of Elections, including the last eight years as a director, I am unaware of any director being paid more than his/her counterpart. This includes my time as a lead director, when I was paid the same as the other non-lead director, David Welch, who held a law degree when he served as a director with me in the early 2000s. <u>It is my understanding that the statutory framework which establishes election authorities requires directors to be paid the same because election authorities are to be bipartisan.</u>

(Taylor Aff. ¶ 18 (emphasis added).) Defendants argue the challenged portion of this averment is based only on speculation because there are no facts in Plaintiff's affidavit indicating how Plaintiff learned of this "statutory framework" requiring the same pay for directors and no reference to statutory or other legal authority for the statement. Therefore, Defendants ask the Court to strike this portion as speculative and not based on Plaintiff's personal knowledge. Plaintiff counters that the challenged statement is "an obvious declaration about the legal underpinning of county boards of election in Missouri made by someone with over thirty years of employment experience with just such an election board." (Pl.'s Resp. to Defs.' Joint Mot. to Strike Portions of Pl.'s Aff. at 2-3 [Doc. 63].) Plaintiff also urges that Missouri's requirement that county board of election staffs be bipartisan requires the same pay for directors. (Id. at 3.)

Due to the absence of a factual basis for the statement regarding a statutory framework requiring the same pay for directors, the Court will strike that portion of paragraph 18 of Plaintiff's affidavit as not based on Plaintiff's personal knowledge. The Court finds that Plaintiff's years of experience with the Board do not clearly provide her

with personal knowledge of an unidentified statutory framework regarding the same pay for directors.

Finally, Defendants ask the Court to strike paragraphs 25 and 26 of Plaintiff's affidavit in their entirety. Those paragraphs state:

> 25. My counsel has explained to me that according to Missouri law a person acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another. An act is wanton when it is done with a wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. Now understanding that definition, I believe that Defendants acted with malice when firing me.

> 26. My counsel has explained to me that according to Missouri law a person acts with bad faith when he acts with a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud and with the actual intent to mislead or deceive another. Now understanding that definition, I believe that Defendants acted with bad faith when firing me.

(Taylor Aff. ¶¶ 25, 26.)

In her earlier deposition, Plaintiff testified in relevant part as follows:

Q. Is it your belief that Bill Miller acted with malice when he voted to end your employment with the Board?

A. I have no opinion on that.

Q. Do you have any idea?

A. No, I don't.

Q. Do you have any idea whether Mr. Zimbalist acted with malice when he voted to end your employment with the Board?

A. I have no idea on that.

(Taylor Dep. at 117 [Doc. 60-1].)[4] Defendants point out that paragraphs 25 and 26 in her affidavit offer contradictory evidence, and that Plaintiff failed to indicate during the subsequent deposition that she did not understand the questions asked and does not indicate in her affidavit that she was confused or made a mistake in answering those questions. Additionally, Defendants contend these paragraphs in the affidavit are not based on her personal knowledge but on her attorney's advice.

Plaintiff responds that the deposition questions, to which Plaintiff's "counsel objected numerous times," were vague and called for legal conclusions and, during the deposition, Defendants' counsel did not provide Missouri's legal definition of malice or bad faith which is more intricate than a layperson's definition of those terms. (Pl.'s Resp. to Defs.' Joint Mot. to Strike Portions of Pl.'s Aff. at 3 [Doc. 63].) Plaintiff argues that these paragraphs of her affidavit are appropriate post-deposition clarification of "deliberate obfuscation by Defendants during her deposition." (Id. at 4.)

Finding no objection to, and no confusion in Plaintiff's deposition regarding, the questions about whether or not Defendants Miller and Zimbalist acted with malice toward Plaintiff when terminating her employment, the Court will strike the contradictory paragraphs 25 and 26 in Plaintiff's affidavit to the extent they apply to those Defendants. Because Defendants did not specifically address Plaintiff's deposition testimony regarding Defendants Yeckel and Diehl when arguing this part of the motion to strike, the Court will

---

[4] Plaintiff also testified, after her attorney objected to the question based on the term "malice" being vague and a legal conclusion, that she had no idea if Defendant Yeckel acted with malice (Taylor Dep. at 117 and 118 [Doc. 52-2]) and that she thought Defendant Diehl acted with malice because she had testified under a lawful subpoena (id. at 119).

not strike paragraphs 25 and 26 to the extent they are directed to Defendants Diehl and Yeckel. As to those Defendants, the Court also notes that Plaintiff's counsel made timely objections to the questions during Plaintiff's deposition, and paragraphs 25 and 26 do not contradict, but supplement, Plaintiff's deposition testimony regarding Defendant Diehl.

Defendants' Motions for Summary Judgment. Defendants filed two motions for summary judgment.

Standard for Summary Judgment. Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986) (quotation marks omitted) (quoting Rule 56(c) of the Federal Rules of Civil Procedure). An issue of material fact is genuine if it has a real basis in the record; and, a genuine issue of fact is material if it "might affect the outcome of the suit under the governing law." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (citations omitted).

The initial burden is on the moving party to clearly establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. See **City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.**, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. See **Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986). Instead, the non-moving party bears the burden of setting forth specific facts by affidavit or otherwise showing that there is a genuine issue for trial.

**Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986); **Palesch v. Missouri Comm'n on Human Rights**, 233 F.3d 560, 565-66 (8th Cir. 2000). All disputed facts are to be resolved, and all inferences are to be drawn, in favor of the non-moving party. See **Ghane v. West**, 148 F.3d 979, 981 (8th Cir. 1998); **Kopp v. Samaritan Health Sys., Inc.**, 13 F.3d 264, 269 (8th Cir. 1993). "[I]n order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." **Webb v. Lawrence County**, 144 F.3d 1131, 1135 (8th Cir. 1998). See also **Stanback v. Best Diversified Prods., Inc.**, 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion).

Discussion. By its motion for summary judgment, the Board seeks entry of judgment in its favor on the grounds either that Plaintiff cannot establish a prima facie case under the EPA or that the Board used factors other than sex in setting Judge Goeke's higher salary, because Judge Goeke had more responsibilities than Plaintiff, was the Lead Director, had more education and experience than Plaintiff, and was paid a higher wage to secure his employment. The Board also argues Eleventh Amendment immunity bars the EPA claim because Congress passed the EPA pursuant to the Commerce Clause, which is not a basis for abrogating sovereign immunity. If the EPA properly abrogates sovereign immunity, then, the Board argues, Congress exceeded its authority in applying the EPA to the states' political subdivisions, such as the Board, due to a lack of congruence and proportionality between the injury Congress sought to remedy and the remedy provided by the EPA.

Eleventh Amendment Immunity. For its argument that Eleventh Amendment immuity bars the EPA claim against it, the Board contends Congress expressly acted only under the Commerce Clause in enacting the EPA, citing 29 U.S.C. § 202(b), 29 C.F.R. 1620.2, and H.R. Rep. No. 93-913 (1974). The Board urges the Commerce Clause is not a valid constitutional basis to abrogate sovereign immunity, and Congress did not state it was exercising its powers under § 5 of the Fourteenth Amendment, which is the constitutional authority under which Congress may abrogate sovereign immunity. Plaintiff responds that, as noted by the Board, several appellate courts have rejected the argument that the EPA was an unconstitutional abrogation of Eleventh Amendment immunity, and the United States Court of Appeals for the Eighth Circuit has held "Congress properly abrogated the states' sovereign immunity when it enacted the EPA," **O'Sullivan v. Minnesota.**, 191 F.3d 965, 967 (8th Cir. 1999).

The Eleventh Amendment prohibits non-consenting States from being sued by private individuals in federal courts. **Board of Trs. of Univ. of Ala. v. Garrett**, 531 U.S. 356, 363 (2001). This immunity extends to "certain actions against state agents and state instrumentalities," **Regents of the Univ. of Cal. v. Doe**, 519 U.S. 425, 429 (1997); **Becker v. University of Neb. at Omaha**, 191 F.3d 904, 908 (8th Cir 1999), but does not extend to local government defendants, **Thomas v. St. Louis Bd. of Police Comm'rs**, 447 F.3d 1082, 1084 (8th Cir. 2006). Whether an entity should be characterized as a local government or as an arm of the state for purposes of Eleventh Amendment immunity is a question of federal law based upon consideration of state law provisions that define the entity's character. **Regents of the Univ. of Cal.**, 519 U.S. at 429 n.5 and 430-31.

The record is not clear whether the Board is properly considered a state instrumentality or a local government entity for purposes of Eleventh Amendment immunity. In its response to the Board's motion for summary judgment, Plaintiff noted the Board is "most likely . . <u>not</u> an arm of the state" for purposes of Eleventh Amendment immunity, citing **Auer v. Robbins**, 519 U.S. 452 (1997) and **Thomas**, <u>supra</u>. (Pl.'s Mem. Opp'n Defs.' Mots. for Summ. J. at 21 n. 5 [Doc. 58].) The Board did not address this issue in either its memorandum supporting its motion for summary judgment or its reply brief. (<u>See</u> Docs. 51 at 9-15 and 61.)

In **Auer**, the United States Supreme Court concluded that the St. Louis Board of Police Commissioners did not share Missouri's State's Eleventh Amendment immunity and was "not an 'arm of the State' for Eleventh Amendment purposes," because, although by state statute the Governor appoints four of that board's five members, the City of St. Louis was responsible, by statute, for that board's financial liabilities, "and th[at] board is not subject to the State's direction or control in any other respect." **Auer**, 519 U.S. at 456 n.1 (quoting <u>Hess v. Port Auth. Trans-Hudson Corp.</u>, 513 U.S. 30, 47-51 (1994)); <u>accord</u> **Thomas**, 447 F.3d at 1087 (which relies on **Auer** while noting concerns about changes in Missouri law since that decision). <u>Cf.</u> **Northern Ins. Co. of N.Y. v. Chatham County, Ga.**, 547 U.S. 189, 193 and 194 (2006) (noting that the Supreme Court "has repeatedly refused to extend sovereign immunity to counties" and that the county conceded "it was not entitled to Eleventh Amendment immunity . . . [apparently] based on the County's failure to qualify as an arm of the State under our precedent"). Because the record is inadequate to decide whether or not the Board is properly considered a local government entity or an entity that

may be deemed a state instrumentality or arm of the state for purposes of Eleventh Amendment immunity, this Court will assume, without deciding, that the Board is entitled to the protection provided by Eleventh Amendment immunity unless an exception to that immunity applies.

The exception to Eleventh Amendment immunity relevant here is the exception provided when "Congress has statutorily abrogated such immunity by 'clear and unmistakable language.'" **Barnes v. Missouri**, 960 F.2d 63, 64-65 (8th Cir. 1992) (per curiam) (quoting Welch v. Texas Dep't of Highways and Pub. Transp., 483 U.S. 468, 474 (1987)).  Not only must Congress expressly abrogate Eleventh Amendment immunity, but it must do so "pursuant to a valid grant of constitutional authority." **Kimel v. Florida Bd. of Regents**, 528 U.S. 62, 73 (2000).  This latter element is the element on which Defendant Board focuses its summary judgment motion.  Therefore, the Court will further assume that Congress expressly provided for abrogation of Eleventh Amendment immunity through the EPA, and will only address whether Congress acted pursuant to a valid grant of constitutional authority in enacting that legislation.

The statutory abrogation of Eleventh Amendment immunity may not be based on Article I, **id.** at 79; see **Seminole Tribe of Fla. v. Florida**, 517 U.S. 44, 57-66, 72-73 (1996), but must occur through the exercise of Congress' § 5 power to enforce the Fourteenth Amendment, **Seminole Tribe of Fla.**, 517 U.S. at 59, accord **Kimel**, 528 U.S. at 79 ("Section 5 of the Fourteenth Amendment . . . does grant Congress the authority to abrogate the States' sovereign immunity").  Therefore, "if the [EPA] rests solely on Congress' Article I commerce power, the private [plaintiff] in today's case[] cannot maintain [her] suit[] against [her] state

[defendant]," **Kimel** 528 U.S. at 79, and Defendant Board is entitled to the entry of summary judgment in its favor.

The Eighth Circuit has held, however, that "Congress properly abrogated the states' sovereign immunity when it enacted the EPA," concluding in relevant part that "Congress acted under a valid exercise of power found in § 5 of the Fourteenth Amendment" in enacting the EPA. **O'Sullivan**, 191 F.3d at 967. While the United States Supreme Court has, since the **O'Sullivan** opinion, considered whether Congress abrogated sovereign immunity through the enactment of other legislation, see, e.g., **Tennessee v. Lane**, 541 U.S. 509 (2004) (as applied to cases implicating the fundamental right of access to the courts, Title II of the Americans with Disabilities Act validly abrogated Eleventh Amendment immunity through enforcement of the Fourteenth Amendment); **Nevada Dep't of Human Res. v. Hibbs**, 538 U.S. 721 (2003) (Family and Medical Leave Act of 1993 (FMLA) was a valid exercise of Congress' § 5 power to combat unconstitutional sex discrimination), it has not yet addressed whether Congress validly exercised its § 5 power in abrogating sovereign immunity through enactment of the EPA. Several appellate courts addressing this issue since the **O'Sullivan** and **Kimel** decisions have upheld Congress's abrogation of Eleventh Amendment immunity through enactment of the EPA. See, e.g., **Siler-Khodr v. University of Tex. Health Sci. Ctr. San Antonio**, 261 F.3d 542 (5th Cir. 2001); **Varner v. Illinois State Univ.**, 226 F.3d 927 (7th Cir. 2000); **Kovacevich v. Kent State Univ.**, 224 F.3d 806 (6th Cir. 2000). Until the Eighth Circuit revisits the issue and decides **O'Sullivan** is incorrect, this Court will not decide the issue in a manner contrary to the **O'Sullivan** decision. Therefore, Eleventh

Amendment immunity is not available to the Board with respect to Plaintiff's EPA claim.

The Board also argues Congress exceeded its authority in applying the EPA to the states' political subdivisions due to the lack of congruence and proportionality between the injury Congress sought to remedy, unequal pay based on gender, and the means used to remedy the injury, the EPA. While the Eighth Circuit did not have this issue before it in the **O'Sullivan** case, several other appellate courts have rejected this argument, finding the EPA "a proportional and congruent response to the problem of unconstitutional wage discrimination based on gender." **Varner**, 226 F.3d 927, quote at 933 and discussion at 932-36; see also **Siler-Khodr**, 261 F.3d at 549-51; **Kovacevich**, 224 F.3d at 815-21; **Hundertmark v. Florida Dept. of Transp.**, 205 F.3d 1272, 1275-77 (11th Cir. 2000). This authority is persuasive, and, based on that authority, this Court concludes the EPA satisfies the Supreme Court's congruence and proportionality test and is, therefore, a valid exercise of Congress' power under §5 of the Fourteenth Amendment.

The Board's motion for summary judgment on Eleventh Amendment grounds is denied.

The EPA Claim. The Board also moves for summary judgment on the ground Plaintiff cannot establish a prima facie case under the EPA because she was not paid differently than a man performing equal work under similar conditions. If she satisfies the prima facie case, then, the Board argues, it is entitled to summary judgment because the difference in pay was based on factors other than sex.

To make a prima facie case under the EPA, Plaintiff must prove that her "employer discriminated on the basis of sex by paying different wages to men and women performing

equal work under similar conditions." **Bearden v. International Paper Co.**, 529 F.3d 828, 833 (8th Cir. 2008). Here, it is undisputed that, as a Director, Plaintiff received less pay than Judge Goeke. "'Equal work' means work 'on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.' 29 U.S.C. § 206(d)(1)." **Brown v. Fred's, Inc.**, 494 F.3d 736, 740 (8th Cir. 2007). There is no dispute that, as Directors, Plaintiff and Judge Goeke performed under similar working conditions. The issue then is whether Plaintiff and Judge Goeke performed equal work as Directors.

To satisfy the equal work requirement of the EPA, the jobs need only be substantially equal, not identical. **Simpson v. Merchants & Planters Bank**, 441 F.3d 572, 578 (8th Cir. 2006). Determining whether two jobs are equal for the EPA is a factual question "dependent on their job requirements, not their job titles, and anchored around skill, effort, and responsibility." **Id.** More specifically, whether or not

> "two jobs are substantially equal 'requires a practical judgment on the basis of all the facts and circumstances of a particular case,' including factors such as level of experience, training, education, ability, effort, and responsibility." Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1029 (8th Cir. 2002) (quoting Buettner v. Arch Coal Sales Co., 216 F.3d 707, 709 (8th Cir. 2000)). "Application of the Equal Pay Act depends not on job titles or classifications but on the actual requirements and performance of the job." EEOC v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1245 (8th Cir. 1981) (citation omitted). "In all cases, therefore, a court must compare the jobs in question in light of the full factual situation and the broad remedial purpose of the statute." Id.

**Lawrence v. CNF Transp., Inc.**, 340 F.3d 486, 492 (8th Cir. 2003); accord **Younts v. Fremont County, Iowa**, 370 F.3d 748, 753 (8th Cir. 2004).

> When evaluating the amount of effort required to perform a job, we consider "the physical or mental exertion necessary to the performance of a job," and when evaluating the amount of responsibility a job entails, we consider "the degree of accountability required in performing a job." Berg v. Norand Corp., 169 F.3d 1140, 1145 (8th Cir. 1999) (citation omitted).

**Younts**, 370 F.3d at 753. Where "two positions require[] different types and degrees of skill and responsibility," they are not substantially equal under the EPA. **Horn v. University of Minn.**, 362 F.3d 1042, 1046 (8th Cir. 2004). "To survive a motion for summary judgment, [a plaintiff in an EPA case] must present at least some evidence showing she and the other employees performed equal work under similar conditions." **Holland v. Sam's Club**, 487 F.3d 641, 645 (8th Cir. 2007).

In deciding whether the Director jobs held by Plaintiff and Judge Goeke require equal skill, the Court considers Plaintiff's and Judge Goeke's experience, training, education, and ability to perform their jobs. In terms of experience, Plaintiff worked for the Board for thirty years, including about six years as a director by the time Judge Goeke started working as a Director, and was able to use Excel and other basic computer programs. (Taylor Aff. ¶¶ 1, 2, 20.) While Judge Goeke did not have prior experience with a Board of Elections, he had thirty years' experience as a state trial court judge and in the U.S. Coast Guard Reserves. (Goeke Aff. ¶ 3.) Judge Goeke also averred that, while he was a judge, he had implemented new procedures and worked with computers in the court. (Id. ¶ 5.)

The record is not clear regarding the specific training Plaintiff and Judge Goeke received for their Director jobs, except to the extent that Plaintiff trained Judge Goeke regarding "the duties of a director" when he became a Director in 2005. (Taylor Aff. ¶ 17.)

It is undisputed that Judge Goeke has more education than Plaintiff, whose highest

degree was a high school diploma (Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 92 [Doc. 52]), in that Judge Goeke has a law degree and has completed course work toward an accounting degree (Goeke Aff. ¶ 2). It is not clear, however, the extent to which the law degree and graduate accounting work benefit the work of a Director, especially when compared to Plaintiff's long period of employment with the Board, including at least five years as a Director. See **Simpson**, 441 F.3d at 578 (noting an employee's college degree was not "relevant to determining the skill required to perform the jobs, since all the skills needed at the [place of employment] were on-the-job acquired").

Finally, with respect to their ability to perform their jobs, the record does not contain either a delineation of the skills needed for the Director position or any formal evaluations of Plaintiff or Judge Goeke during their tenure as Directors, although during his deposition Defendant Diehl expressed his opinion that "there are a ton of documents out there where one could conclude that [Plaintiff's] job performance was poor" (Diehl Dep. at 36).

"When evaluating the amount of effort required to perform a job, we consider 'the physical or mental exertion necessary to the performance of [the] job.'" **Younts**, 370 F.3d at 753 (quoting Berg, 169 F.3d at 1145). In assessing the effort, the Court may consider the knowledge necessary to the job, the amount of work the job entails, and the extent to which each employee represents the employer in other situations. See **Simpson**, 441 F.3d at 578 (noting, in analyzing the effort requirement of an EPA claim, that both employees "were required to apply the same base of banking knowledge to their jobs[,] . . . both were required to work after-hours and both represented the Bank at public functions"). When evaluating the amount of responsibility a job entails, we consider "the degree of accountability required

in performing [the] job." **Younts**, 370 F.3d at 753 (quotation marks omitted) (quoting Berg, 169 F.3d at 1145).

The record here does not specifically address these aspects of the Director job or of Plaintiff's and Judge Goeke's work as Directors. While Plaintiff acknowledged that Judge Goeke "spearheaded" or "led" the effort to switch to electronic voting machines, the record also establishes that Plaintiff was involved in that effort and recommended the machine ultimately approved by the Board. (Taylor Dep. at 43, 46 [Doc. 52-1]; Taylor Aff. ¶¶ 22-24.) In fact Plaintiff's averments regarding their efforts and responsibilities as Directors indicate that they both

> manage[d] all elections in St. Louis County [and] r[a]n the day-to-day operations for [the] Board, including, among other duties, overseeing personnel, reviewing and approving financial and accounting transactions, developing and presenting annual budgets and speaking to various civic and political organizations about election laws[;]
>
> *   *   *
>
> [and that she participated in the process to find new voting machines] by researching machines, attending demonstrations of machines, overseeing the deputy director's written reports of our research and assessing budgetary aspects of potential machine purchases.

(Taylor's Aff. ¶¶ 21and 23.)

Under the circumstances, the record indicates that genuine issues of fact exist regarding whether Plaintiff's and Judge Goeke's jobs as Directors had equal skill, effort, and responsibility, and Plaintiff has submitted evidence sufficient to withstand summary judgment regarding the prima facie case on her EPA claim.

Once a prima facie case under the EPA is demonstrated, the "employer may avoid liability [under the EPA] by proving any of four affirmative defenses, one of which is that the pay difference between men and women was based on a factor other than sex." **Brown**, 494 F.3d at 740. The Board argues it is entitled to summary judgment on the EPA claim because any pay difference between Plaintiff and Judge Goeke was based on factors other than sex. Specifically, the Board urges the undisputed record establishes that Judge Goeke's salary was higher than Plaintiff's because he was the Lead Director, he was a Republican and she was a Democrat, he brought different education and experience to the Board, and because he would not postpone his retirement from the trial bench to accept the Lead Director positions for a salary less than approximately $108,000 per year. (Goeke Aff. ¶ 10).

"A [salary] differential based on education or experience is a factor other than sex recognized by the [EPA]." **Hutchins v. International Bhd. of Teamsters**, 177 F.3d 1076, 1081-82 (8th Cir. 1999). While Judge Goeke did have more education than Plaintiff, Plaintiff had more experience with the Board than Judge Goeke, including several years as a Director. "[E]xperience with [an employer] may constitute a factor in the salary calculation." **Lawrence**, 340 F.3d at 493-94. Additionally, the record reveals that an earlier Director who had a law degree did not receive a salary higher than Plaintiff's salary when Plaintiff and that earlier Director served together as Directors, with Plaintiff in the position of Lead Director. (Taylor Aff. ¶ 18.) Moreover, the Board has not established the extent to which the differences between Judge Goeke's education and experience and Plaintiff's education and experience benefit the Director position so as to support the salary differential.

To the extent the Board relies on Judge Goeke's need to have a circuit judge's

$108,000 salary, or a salary higher than Plaintiff's salary, to accept the Director position, it is not clear that such a rationale alone suffices to support a salary differential between men and women for equal work under the EPA. **Simpson**, 441 F.3d at 579 (noting "[e]xterior salary pressures have been rejected as reasons for pay differential[s]," citing Irby v. Bittick, 44 F.3d 949, 955 (11th Cir. 1995)). While acknowledging a jury may reasonably reject exterior salary pressures for pay differentials under the EPA, **id.**, the Eighth Circuit requires "a case-by-case analysis of reliance on prior salary . . . policies with careful attention to alleged gender-based practices." **Taylor v. White**, 321 F.3d 710, 720 (8th Cir. 2003). Based on the present record, it is not clear that an arguable need to satisfy Judge Goeke's pre-employment salary request justifies the $6,000 difference between his salary and Plaintiff's salary.

To the extent Judge Goeke urges the salary differential is supported by his position as Lead Director, which he urges had greater responsibilities than Plaintiff's position as Director, the available record does not clearly delineate the responsibilities of the Lead Director, especially as distinct from those of a Director. Without more, there is no basis for determining that the responsibilities of the Lead Director position justify a greater salary for a male in that position than for a female in the position of Director.

The Board also points to exhibits the Board urges indicate that the male successor to Plaintiff's Director position received about the same salary as Plaintiff, which was less than the salary Judge Goeke received. (Compare Defs.' Exs. U and Z.) The record contains no information about the successor other than this exhibit. Without more, this is insufficient to satisfy the Board's burden to show there is no genuine issue of material fact and it is entitled

to entry of summary judgment for paying Judge Goeke more money as Lead Director than it paid Plaintiff as Director based on the defense that the pay differential was based on a factor other than sex.

At this stage there exist genuine issues of material fact regarding the Board's use of Judge Goeke's greater education, different experience, desire for the $108,000 salary to accept the Director position, and responsibilities as Lead Director to support paying him a greater salary than the Board paid Plaintiff for her role as Director.

The Board's motion for summary judgment on the EPA claim in Count II on the ground Plaintiff cannot establish a prima facie case for her EPA claim and on the ground the pay differential was based on a factor other than sex is denied.

The Individual Defendants seek entry of summary judgment in their favor on the wrongful discharge claim in Count I because they were not Plaintiff's employer, in that only the Board employed Plaintiff, and a wrongful discharge claim may only be brought against an employer. Additionally, the Individual Defendants argue they are entitled to official immunity because voting to terminate Plaintiff's employment was a discretionary act and the undisputed record establishes that none of the individual Defendants acted in bad faith or with malice when voting to discharge Plaintiff. Individual Defendants further contend that Plaintiff's discharge does not fall within the narrow public policy exception to Missouri's employment at-will doctrine.

Individual Members of the Board as Employer. Individual Defendants first argue that Plaintiff may not maintain her wrongful discharge action against the Individual Defendants sued in their individual capacities because they were not Plaintiff's employer. Individual

Defendants urge the Board was Plaintiff's employer for purposes of a wrongful discharge action, and therefore only the Board may be held liable for a wrongful discharge. A wrongful discharge claim is only available against the plaintiff's "actual former employer." **Genasci v. City of O'Fallon, Mo.**, 4:06CV0542 CDP, 2008 WL 3200812, *5 (E.D. Mo. Aug. 6, 2008) (granting motion for summary judgment to dismiss wrongful discharge claim against individual defendants upon concluding only the City of O'Fallon was the plaintiff's employer) (internal quotation marks omitted), quoting Criswell v. City of O'Fallon, Mo, No. 4:06CV1565 ERW, 2007 WL 1760744, *6 (E.D. Mo. June 15, 2007) (granting motion to dismiss a wrongful discharge claim against individual defendants, including the city councilmen, upon concluding the plaintiff's only employer was the city)) (quoting Mobley v. City of O'Fallon, No. 4:06CV1566 JCH, *9 (E.D. Mo. March 30, 2007)).

Here, it is undisputed that "[t]he Board has direct responsibility for the hiring and termination of Directors." (Defs.' Joint Statem. Uncontr. Mat. Facts ¶¶ 7 [Doc. 52]; see also Mo. Rev. Stat. §§ 115.045, 115.047 and 115.049; and that the Directors are at-will employees of the Board (Defs.' Joint Statem. Uncontr. Mat. Facts ¶ 10 [Doc. 52]). Importantly, it is also undisputed that "[n]o individual Commissioner can terminate a Director" (id. ¶ 62), and "[t]he decision to terminate Plaintiff required a majority vote of the Commissioners" (id. ¶ 61). Therefore, while the parties agree that "[t]he Commissioners supervise and approve raises for the Directors," (id. ¶ 8), cf. Mo. Rev. Stat. § 115.149 (the board of election commissioners "shall set the salaries of its employees"), the undisputed record clearly discloses that the Commissioners in their individual capacities were not Plaintiff's employer.       To the extent they are sued in their individual capacities, the

Individual Defendants are entitled to summary judgment on Plaintiff's wrongful discharge claim in Count I because they were not Plaintiff's employer.   See **U.S. ex rel. Golden v. Arkansas Game & Fish Comm'n**, 333 F.3d 867, 870-71 (8th Cir. 2003) (affirming the grant of summary judgment on a retaliation claim under the False Claims Act against individual defendants, including commissioners sued in their individual capacities, upon finding the claim failed as a matter of law because Plaintiff's employer was the Arkansas Game and Fish Commission, rather than the individual defendants); but see **Darby v. Bratch**, 287 F.3d 673, 680-81 (8th Cir. 2002) (finding upon appeal from a grant of summary judgment that the definition of employer in the FMLA allows a plaintiff to pursue an FMLA retaliation claim against public officials sued in their individual capacities because the statutory definition "plainly includes persons other than the employer itself" and there is no reason to distinguish between private sector and public sector employers).  The cases cited by Plaintiff to support her position that she can maintain a wrongful discharge claim  against Individual Defendants in their individual capacities are distinguishable in that they do not address what constitutes an employer for a Missouri wrongful discharge claim.  **Moran v. Clark**, 359 F.3d 1058 (8th Cir. 2004) (addressing qualified immunity issues for a claim under 42 U.S.C. § 1983); **Mauzy v. Mexico Sch. Dist. No. 59**, 878 F.  Supp. 153, 156 (E.D. Mo. 1995) (finding the defendant school district may be liable on the 42 U.S.C. § 1983 claim and, therefore, a motion to dismiss would not be granted on the ground that the plaintiff named as defendants only some of the school board members in their official capacities);  **Kizer v. Curators of the Univ. of Mo.**, 816 F. Supp. 548, 550-51 (determining what is an employer for purposes of Age Discrimination in Employment Act).

Having granted the Individual Defendants' motion for summary judgment on the ground they were not Plaintiff's employer, the Court will not address the other arguments they present in support of their motion for summary judgment.

<u>**Conclusion**</u>

Having denied the Board's motion for summary judgment and granted the Individual Defendants' motion for summary judgment, Plaintiff's Equal Pay Act claim against the Board in Count II is the only claim remaining before the Court.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Board's motion for leave to supplement its motion for summary judgment [Doc. 64] is **DENIED**.

**IT IS FURTHER ORDERED** that the joint motion to strike portions of Plaintiff's affidavit filed by all Defendants [Doc. 59] is **GRANTED in part** as to the challenged portions of paragraphs 10 and 18, and as to paragraphs 25 and 26 only to the extent those paragraphs are directed to Defendants Miller and Zimbalist, and is **DENIED in part** to the extent paragraphs 25 and 26 are directed to Defendants Yeckel and Diehl.

**IT IS FURTHER ORDERED** that the Board's motion for summary judgment [Doc. 50] is **DENIED**.

**IT IS FURTHER ORDERED** that individual Defendants' motion for summary judgment [Doc. 48] is **GRANTED**.

**IT IS FINALLY ORDERED** that.this matter is set for a conference on **May 12, 2009,** at **10:30 a.m.** in chambers to schedule a trial date.

/s/ Thomas  C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of April, 2009.